

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 8, 2021

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Joseph Minetto,* **19 Cr. 833 (SHS)**

Dear Judge Stein:

      The Government respectfully submits this letter in connection with the sentencing of Joseph Minetto, currently scheduled for December 15, 2021. As set forth in the parties' plea agreement, dated May 7, 2021 (the "Plea Agreement"), and as calculated by the Probation Office (*see* Presentence Report dated November 23, 2021 ("PSR") ¶ 98), the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") is 78 to 97 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government respectfully submits that Minetto should be sentenced to a substantial term of imprisonment below the Stipulated Guidelines Range.

      **I.**    **Background**

      **A. Role in the Offense**

      In early 2016, the Government, in partnership with the New York City Police Department ("NYPD") and Homeland Security Investigations ("HSI"), began investigating a large-scale telemarketing scheme targeting elderly and vulnerable victims (the "Victims") throughout the United States. As the Court learned while presiding over the related case (and trial) in *United States v. Ketabchi*, 17 Cr. 243 (SHS), Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on false and fraudulent pretenses, representations, and promises, including representations made by the *Ketabchi* defendants that the Victims would earn money through an "online business" created and managed by those defendants and their co-conspirators (the "Business Opportunity Scheme"). In fact, the businesses did not exist, and the Victims never made any money.

      The Business Opportunity Scheme in the New York/New Jersey area originated with several former members of the Tax Club, including Ryan Hult, William Sinclair, Anthony

Rev. 07.20.2016

Cheedie, and Arash Ketabchi.  When the Tax Club was shut down following a Federal Trade Commission ("FTC") investigation in around 2013, Hult, along with Jason Sager, started Top Shelf Marketing, which sold the same Business Opportunity Scheme products that had previously been sold at the Tax Club.  Joseph Minetto and Raymond Quiles (who was also charged in the *Ketabchi* case) began providing fulfillment to Top Shelf, as well as Olive Branch Marketing (owned by Sinclair and Michael Finocchiaro) and Cheedie.  After Top Shelf became the subject of another FTC investigation, Minetto worked with Hult (his cousin) to broker leads from sales floors in Utah and Arizona to sales floors in New York and New Jersey, and Quiles continued to provide fulfillment services to those sales floors.

The Government prosecuted Sinclair, Finocchiaro, and Quiles, among others, in the *Ketabchi* case.  Following the resolution of the *Ketabchi* case in late 2018, the Government's investigation shifted to those telemarketing sales floors that continued to operate in the New York and New Jersey area despite the *Ketabchi* case, including Corporate Development Center ("CDC") and Alliance Education ("Alliance" and, collectively "CDC/Alliance"), which sales floors were run by Minetto and Joseph Ciaccio, along with Hult.  In January 2019, HSI executed a search warrant at the CDC/Alliance office in Englewood, New Jersey, during which search HSI collected paper documents and electronic devices from the employees who were present.  Evidence developed through the search and the Government's interviews of a cooperating witness (the "CW"), confirmed that Minetto was one of the individuals responsible for the day-to-day operations of CDC/Alliance.  Minetto was arrested on November 20, 2019.  Minetto pleaded guilty to wire fraud conspiracy pursuant to a plea agreement in June 2021.

**II.     Applicable Law**

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways."  *United States v. Booker*, 543 U.S. 220, 252 (2005).  Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005).  The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).  In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered.  Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two.  That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure.  *See Crosby*, 397 F.3d at 103.  First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence."  *Id*. at 112.  Second, the Court must consider whether a departure from that Guidelines range is appropriate.  *Id*.  Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence.  *Id.* at 113.  In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances."  *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

### III.    The Section 3553(a) Factors Support a Substantial Sentence of Imprisonment Below the Stipulated Guidelines Range

A substantial sentence of imprisonment below the Stipulated Guidelines Range would be sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense for Minetto.  Such a sentence would also afford adequate deterrence to criminal conduct and would avoid unwarranted sentencing disparities among similarly situated defendants.

Minetto participated in a widespread and sophisticated scheme in which Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on the defendants' false promises and representations that the Victims would earn money through an "online business" created and managed by the defendant's co-conspirators.  In fact, there were no such businesses and the Victims never earned the money they were led to believe they would earn.

Minetto's participation in the charged crime was extensive in its duration and scope.  Minetto first participated in the Business Opportunity Scheme in 2013 and continued to do so until

his arrest in late 2019, notwithstanding his awareness of criminal charges brought against co-conspirators in the *Ketabchi* case, and of the FTC's investigation of Top Shelf.  Rather than leave the Business Opportunity Scheme, Minetto instead assumed a management role at CDC/Alliance, and oversaw the work of salespeople (like DePaola and Larkin) who continued to sell Business Opportunity Scheme products until their respective arrests.

In particular, while Minetto's conduct was similar to that of Ryan Hult in scope and duration, Minetto did not assist the Government as Hult did.  On the other hand, Minetto also did not exercise the same level of oversight in the Business Opportunity Scheme as Hult exercised and did not violate the law after his guilty plea in the way Hult did.  In the Government's view, Minetto's conduct was less egregious than the conduct of Ketabchi or Christopher Wilson, who were sentenced to 87 months' and 72 months' imprisonment, respectively.  Minetto's conduct was comparable to that of Jack Kavner, who was sentenced to 51 months' imprisonment in the *Ketabchi* case, and Minetto conduct was more serious than that of Joseph DePaola, who received a sentence of 30 months' imprisonment.  While Minetto seeks a significant downward variance based on his purported extraordinary acceptance of responsibility and other mitigating circumstances, that acceptance began only after Minetto was caught and prosecuted for the instant offense, and does not support the sentence he seeks even in light of the mitigating personal circumstances he presents to the Court.  In light of the sentences imposed on co-defendants in this case and the related *Ketabchi* case, the Government submits that a significant term of imprisonment is appropriate in this case, but that a sentence within the Guidelines Range would be greater than necessary.

### IV.  Conclusion

Based on the foregoing, a substantial sentence of imprisonment below the Stipulated Guidelines Range would be sufficient and not greater than necessary to serve the aims of sentencing in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  _____
Kiersten A. Fletcher
Robert B. Sobelman
Sheb Swett
Assistant United States Attorneys
(212) 637-2238/2616/6522

Cc:  Counsel of Record (by ECF)